# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO
_____

NEW MEXICO PSYCHIATRIC SERVICES CORP.,

        Plaintiff,

v.                                          No. CV 15-00422 WJ/SMV

THE STATE OF NEW MEXICO, *et al*.,

        Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AS TO PLAINTIFF'S FEDERAL CLAIMS AND REMANDING BACK TO STATE COURT PLAINTIFF'S REMAINING STATE LAW CLAIM (COUNT II)

THIS MATTER comes before the Court upon Defendants State of New Mexico Human Services Department ("HSD") together with HSD-named Defendants Sandra  Chavez, Sidney Squire, and Brent Earnest ("Defendants") Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted and Qualified Immunity (**Doc. 27**). Having considered the parties' written arguments and the applicable law, the Court finds that Defendants' Motion is well-taken, and therefore, **GRANTED**.

### BACKGROUND

Plaintiff New Mexico Psychiatric Services Corporation ("NMPSC") is a New Mexico corporation that coordinates and manages physicians to provide behavioral healthcare services to New Mexico Medicaid beneficiaries through contracts with the HSD. The individual Defendants all work at HSD.

On or about February 20, 2012, Defendants sent NMPSC a letter notifying them that

HSD would be suspending Medicaid payments to NMPSC based upon a "credible allegation of fraud" under 42 C.F.R. § 455.23(a)(1). NMPSC alleges this was done without properly determining that there actually existed a credible allegation of fraud as defined by 42 C.F.R. § 455.2, which requires that allegations "have indicia of reliability" and that the State Medicaid review "all allegations, facts, and evidence carefully and acts judiciously on a case-by-case basis." This payment suspension may only be "temporary." *See* 42 C.F.R. § 455.23(c). NMPSC alleges that the MAD 335 Provider Agreement incorporates the provider's right to administrative review when state law requires and that a payment withhold based on a credible allegation of fraud may only be temporary. NMPSC further alleges that HSD did not indicate what the "credible allegation of fraud" was and did  not provide sufficient information for NMPSC to respond to the allegation, despite 42 C.F.R. § 455.23(b)(2)(ii) requirement that the State agency "[s]et forth the general allegations as to the nature of the suspension action . . . ." NMPSC alleges that HSD's decision to suspend Medicaid payments without having to show that credible allegations of fraud have indicia of reliability and without having to provide an administrative review of the decision to suspend payments amounts to a denial of due process. NMPSC alleges in Count I a violation of 42 U.S.C. § 1983 based upon federal statutory rights under 42 C.F.R. § 455 to not have Medicaid payments suspended without a proper determination that there was a "credible allegation of fraud" and for the payment suspension to be "temporary." Plaintiff's payments have been suspended for over forty-four months. In Count II, NMPSC alleges a breach of contract by the State of New Mexico and HSD. Specifically, NMPSC alleges that Defendants have breached their provider agreement, which is "governed by the laws of the State of New Mexico," by withholding payments for an indefinite period of time without giving a provider hearing.

2

Defendants filed their Motion to Dismiss (**Doc. 27**) on January 8, 2016. Plaintiff filed their Response on January 27, 2016 (**Doc. 31**). Defendants filed their Reply (**Doc. 35**) on February 19, 2016.

LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a case for failure to state a claim upon which relief can be granted. Rule 8(a)(2), in turn, requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must accept all the complaint's factual allegations as true, the same is not true of legal conclusions. *See id.* Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

DISCUSSION

Defendants present three main arguments: (1) Count I should be dismissed because Plaintiff has not alleged a violation of a federal right because the regulations relied upon do not create federal rights and because the Medicaid Act does not create federal rights; (2) Defendants are entitled to qualified immunity; and (3) Plaintiff has failed to allege that HSD breached a contractual provision, so Count II should be dismissed.

**I.      Plaintiff Has Not Alleged a Violation of a Federal Right**

Defendants argue first that in order to assert a § 1983 claim, Plaintiff must show a violation of a federal *right*, not merely a violation of federal law. Plaintiff does not argue that the Medicaid Act creates any right to sue. Plaintiff instead relies upon federal regulations 42 C.F.R. §§ 455.12–23 for its claim. A private right of action may be conceived only by a statute that clearly evinces congressional intent to bestow such a right. *See Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001). Further, an administrative regulation alone "cannot create an enforceable § 1983 interest not already implicit in the enforcing statute." *Smith v. Kirk*, 821 F.2d 980, 984 (4th Cir. 1987). Defendants argue that a second major obstacle to Count I of Plaintiff's claim lies in the focus of the regulation. The regulations at issue focus on the agency regulated (here, HSD), not providers such as the Plaintiff. 42 C.F.R. § 455 regulates the steps a state must follow in order to receive Medicaid funds. Defendants note that though the regulations state that the regulated agency must not infringe on the legal rights of the persons involved, these regulations are primarily focused on the conduct of the states, and say nothing about protecting providers such as Plaintiff or affording them due process. Further, 42 C.F.R. § 455 does not regulate a provider's activities, but only regulates the state. Thus, the regulations create no implication of an intent to confer rights on a particular class of persons. Alternatively, Defendants argue that the Medicaid Act provides that the sole remedy provided for by Congress for states that do not comply with the Medicaid Act is the withholding of federal funding for failure to comply. *See Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1387 (2015). Defendants conclude that the Medicaid Act was intended to benefit Medicaid recipients, not Medicaid providers, and therefore, Plaintiff cannot sue to enforce the Act. *See Providence Pediatric Med. Daycare, Inc. v. Alaigh*, 112 F. Supp. 3d 234, 251 (D.N.J. 2015).

Plaintiff responds that the state plan requirements under 42 C.F.R. § 455.12 include the

mandate that state Medicaid agencies must have methods for investigating cases of suspected fraud to ensure they "(1) [d]o not infringe on the legal rights of persons involved; and (2) [a]fford due process of law." 42 C.F.R. § 455.13. Plaintiff argues that such requirements are clearly intended to benefit Medicaid providers like Plaintiff by protecting them from abuse of power and arbitrary imposition of payment suspensions. Further, the mandate in 42 C.F.R. § 455.23(c) that a payment suspension be temporary exists to prevent a provider from being deprived of payments and potentially going out of business. Plaintiff also argues that Defendants overstate the breadth of *Armstrong*, noting that the Supreme Court there held that the Medicaid Act prohibited a suit in equity because a remedy already existed for the conduct. 135 S. Ct. at 1383. By contrast, the Supreme Court has not addressed the issue of whether the Medicaid Act or any regulations thereunder create federal rights enforceable under § 1983. Here, there is no remedy in 42 C.F.R. § 455 for redress of arbitrary payment suspensions. Plaintiff continues that there certainly exists "rights containing" language in the regulation, as it mandates that state Medicaid agencies have methods for investigating cases of suspected fraud. Moreover, nothing in the Medicaid program regulations forbid recourse to § 1983, and the burden is on the State to show that Congress intended to foreclose such private enforcement. *See Wright v. City of Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 423 (1987).

The Court finds that while the regulations cited by Plaintiff may contain some language designed to help protect Plaintiff and other providers from arbitrary state Medicaid agencies, such language is merely an incidental benefit and does not suggest that Plaintiff is the intended beneficiary of the regulations. The regulations in 42 C.F.R. §§ 455 "set forth requirements for a State fraud detection and investigation program" and "provide[] State plan requirements for the identification, investigation, and referral of suspected fraud and abuse cases." *See* 42 C.F.R.

5

§ 455.1. Rather than creating individual entitlements for Medicaid providers, the regulations "facilitate[] federal oversight of state Medicaid programs" and ensure that the State has a method to verify whether services reimbursed by Medicaid providers were actually furnished to beneficiaries. *San Lazaro Ass'n, Inc. v. Connell*, 286 F.3d 1088, 1098 (9th Cir. 2002).

The Tenth Circuit has suggested that "[i]n at least some instances, violations of rights provided under federal regulations provide a basis for § 1983 suits," citing to *Wright v. City of Roanoke Redevelopment and Housing Authority*, 479 U.S. 418 (1987) and *Samuels v. D.C.*, 770 F.2d 184 (D.D.C. 1985), but declined to "decide whether violation of the regulation in question allows for suit under § 1983, as we hold defendants can claim qualified immunity from damages." *DeVargas v. Mason & Hanger-Silas Mason Co., Inc.*, 844 F.2d 714, 724 n.19 (10th Cir. 1988). *Wright* permitted a § 1983 suit by public housing tenants on the basis that Congress had already conferred that right through statute and because the regulation's "intent to benefit tenants is undeniable." 479 U.S. at 430. Similarly, in *Samuels*, "Congress explicitly directed HUD to issue mandatory grievance procedure regulations" for tenant disputes. 770 F.2d at 200. By contrast, the regulations and statutes at issue here evince no explicit or undeniable intent by Congress to benefit Medicaid providers like Plaintiff.

Other circuits addressing the issue have concluded that without rights-creating language found in the enforcing statute, a federal regulation may not create a right enforceable through § 1983. *See Save Our Valley v. Sound Transit*, 335 F.3d 923, 939 (9th Cir. 2003) ("[T]he Supreme Court's *Sandoval* and *Gonzaga* decisions, taken together, compel the conclusion we reach today: that agency regulations cannot independently confer rights enforceable through § 1983."); *South Camden Citizens in Action v. N.J. Dep't of Envtl. Prot.*, 274 F.3d 771, 790 (3d Cir. 2001) ("Accordingly, we hold that a federal regulation alone may not create a right enforceable through

section 1983 not already found in the enforcing statute."); *Johnson v. City of Detroit*, 446 F.3d 614, 629 (6th Cir. 2006) ("[B]ecause we conclude that the relevant provisions [of the statutes] do not confer personal federal rights upon plaintiff that are enforceable under § 1983, the federal regulations promulgated pursuant to these statutes are likewise incapable of independently conferring such rights.").

In this case, Plaintiff points to no statutory language that provides a personal federal right and relies only upon the regulations. Plaintiff is correct that *Armstrong v. Exceptional Child Center, Inc.*, cited by Defendants, prohibited a suit in equity because a remedy already existed to redress the conduct, unlike 42 C.F.R. § 455 which provides no remedy for redress of payment suspensions. *See* 135 S. Ct. 1378, 1387 (2015). Yet the Supreme Court also noted that "the Medicaid Act implicitly precludes enforcement of § 30(A), and respondents cannot, by invoking our equitable powers, circumvent Congress's exclusion of private enforcement." *Id.* at 1385. Similarly, Plaintiff points to no language in the relevant portions of the Medicaid Act, 42 U.S.C. § 1396a, to suggest any rights-creating language directed at providers. The Court finds that the lack of rights-creating language in the regulations themselves demonstrates that Plaintiff has no private cause of action and thus, Plaintiff's § 1983 claim must be dismissed. Even if 42 C.F.R. § 455 did contain rights-creating language directed at Medicaid providers, persuasive authority indicates that a federal regulation alone may not create a right enforceable through § 1983 not already found in the enforcing statute. As Plaintiff points to no rights-creating language in the Medicaid Act, the Court finds that this too dooms Plaintiff's claim.

## II.  Qualified Immunity

Defendants argue that even assuming there was a private right of action, Plaintiff has not shown that the right was clearly established at the time of the alleged violation. *See Anderson v.*

*Creighton*, 483 U.S. 635, 640 (1987). Plaintiff argues that no reasonable official could read 42 C.F.R. § 455.12–23 and believe they could make a finding of a "credible allegation of fraud" without performing an investigation to determine whether the allegations "have indicia of reliability." 42 C.F.R. § 455.14.  Defendants retort that one Defendant's alleged knowledge of the regulations does not equate knowledge of a clearly established right because the regulations in question are directed at HSD, not Plaintiff. Thus, Plaintiff has conceded that she cannot show that the right she alleges was clearly established by Supreme Court or Tenth Circuit precedent, and has failed to cite any authority that recognizes that right.

The Court agrees with Defendants that even if there were a private right of action upon which Plaintiff could proceed, Defendants would be entitled to qualified immunity. A reasonable public official's knowledge of the regulations in 42 C.F.R. § 455 would not lead them to believe that they vested Plaintiff with a clearly established right, and would not give the official fair warning that their conduct would violate federal law. *See United States v. Lanier*, 520 U.S. 259, 270 (1997).

## III.    Breach of Contractual Provision

Plaintiff's Count II alleges that the MAD 335 Participation Provider Agreement ("PPA") between NMPSC, the State of New Mexico, and HSD incorporates the provider's right under 42 C.F.R. § 455.23 to an administrative review and that a payment withhold based upon a credible allegation of fraud may only be "temporary." By withholding payments for an indefinite period of time, Plaintiff concludes that the State and HSD have breached the PPA. Defendants argue that Plaintiff has failed to allege that HSD breached a contractual provision of the PPA, so Count II should be dismissed.

In essence, Plaintiff contends that Defendants have breached the PPA by failing to

8

comply with federal regulations that are incorporated into the PPA. However, the PPA is an agreement "between the New Mexico Human Services Department (HSD) and the applicant as provider" that "specifies the terms and conditions for the provision of medical services to Medicaid clients." Doc. 49-5. Plaintiff argues that the PPA incorporates the relevant law, whether or not it is referred to in the agreement, and such relevant law includes the Medicaid Act and regulations promulgated thereunder. However, "the mere fact that a court necessarily must interpret federal law or federal regulations to determine the merits of a claim is insufficient to confer federal jurisdiction." *See J.A. Jones Const. Co. & Daidone Elec. Of N.Y., Inc., a Joint Venture v. City of New York*, 753 F. Supp. 497, 501 (S.D.N.Y. 1990) (citing *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 810 (1986)). Asking the Court to construe federal regulations which may or may not be incorporated into the PPA is insufficient to confer federal jurisdiction in this case. *See id*. Plaintiff claims that the PPA must be construed to harmonize with federal Medicaid law and the regulations which they incorporate. However, in determining whether federal question jurisdiction exists, it is insufficient for a federal law to be a mere component of a state law cause of action, such as where Medicaid regulations are implicitly incorporated into a contract between a State and a private party. *See Rivera v. Phipps Houses Services, Inc.*, No. 01 CIV . 2324 (HB), 2001 WL 740779, at *3 (S.D.N.Y. June 29, 2001). Additionally, "under *Merrell Dow*, if a federal law does not provide a private right of action, then a state law action based on its violation perforce does not raise a 'substantial federal question' sufficient to confer federal-question jurisdiction." *Utely v. Varian Associations, Inc.*, 811 F.3d 1279, 1283 (9th Cir. 1987). Thus, the Court finds that Plaintiff's Count II is insufficiently substantial to independently confer federal-question jurisdiction and is in essence a state-law based contract claim. As there is no diversity of citizenship, the Court has jurisdiction

over this claim only by virtue of supplemental jurisdiction. *See* 28 U.S.C. § 1367. "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid By and Through Enid City Com'n*, 149 F.3d 1151, 1156 (10th Cir. 1998). 28 U.S.C. § 1367(c) states that "the district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." As the Court has dismissed Count I, the district court has dismissed all claims over which it had original jurisdiction and declines to exercise jurisdiction over Count II. While the Court does not decline to exercise supplemental jurisdiction on the grounds that the claim raises a novel or complex issue of State law under 28 U.S.C. § 1367(c)(1), the Court does note that this case brings important issues which are more properly decided in the state courts of the State of New Mexico.

Defendants filed a Notice of Removal (**Doc. 1**) alleging that the Court had jurisdiction based on Plaintiff's assertion of claims based in federal law. *See* Doc. 1, at 2. The Court, however, has dismissed all federal claims in the Complaint. The Court will decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claim and thus, this claim is remanded back to the First Judicial District Court, County of Santa Fe, State of New Mexico. In view of the remand of Count II, the Court does not address that part of Defendants' Motion addressing the state-law breach of contract claim.

**THEREFORE**, for the reasons stated herein, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's Count I and **REMANDS** Count II back to the First Judicial District Court, County of Santa Fe, State of New Mexico.

**SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE